Case number 17-3779 Mesa Underwriters Specialty Insurance Company v. Secret's Gentleman's Club et al. Oral argument is not to exceed 15 minutes for the plaintiff and 15 minutes to be shared by the defendants. Mr. Campbell for the appellant. Thank you and good morning, Your Honors. We really appreciate your time this morning. Your Honors, the trial court gave Secret's liquor liability coverage that it never paid for based solely on an unconfessed state court damages hearing. There are three questions we're asking the court to decide today. First, does Secret's have standing to assert the very same claims that it assigned fully and unconditionally to the Sniders? Second, is the state court judgment entitled to collateral estoppel effect, where the issue to be estopped was not actually litigated, was not necessary to the judgment, and was collusively obtained? And finally, did Mesa have any coverage duty at all, where the claims both as alleged in the contract and as characterized by Secret's are barred by the plain language of the Policy Exclusions and the Dram Shop Act? Your Honors, the appellee's own words and the words of the Ohio Supreme Court answer each of these questions. So starting with standing, Secret's own words tell us that they assigned their claims. In the settlement agreement, here's what they said. Quote, Secret's hereby assigns any claims it has against the insurer, including indemnification, breach of contract, failure to defend and identify, and breach of fiduciary duties and bad faith. They reaffirmed this assignment later in this litigation when they signed an addendum, and here's how they characterized the assignment. Quote, the parties properly effectuated the assignment of all claims identified above. So this was not a partial assignment of claims, as Secret's is arguing here. They were absolute, and they were unconditional, and just listen to the counterclaims that they're asserting in this case. Declaratory judgment with respect to the duties to defend and indemnify, damages for breach of the policy, and damages for breach of fiduciary duty and bad faith. Each one of these claims were assigned to the Sniders. Secret's is arguing that it retained a financial interest in the outcome of this case, and that should create standing, but they acquired that interest in a contract with the Sniders, which is enforceable only against the Sniders, not against MESA. A contingent right to profit from the Snider's judgment in this case doesn't create standing for Secret's to appear in this case. And Secret's is also arguing it's been damaged because it incurred costs in connection with its own settlement. But Secret's counterclaims don't make any reference to that theory at all, nor can they, because MESA isn't the cause of Secret's voluntary choice to assign its claims. There's simply no theory of law that supports that kind of a claim against MESA. Secret's unconditional assignment of its claims deprived it of standing. Turning to collateral estoppel, there are three issues we'd like to focus on this morning. The issue that the athletes seek to establish here is that Secret's common law negligence was separate, distinct, and independent from the sale or furnishing of alcohol. Well, the first problem is that that issue was not actually litigated, because the state hearing was uncontested pursuant to the party's own stipulation. For collateral estoppel, the party... Where do you get that from? I thought that this hearing was pursuant to an agreement that permitted Secret to contest liability, and that said the judge will determine the liability if any, and then that the judge's job was to decide these things, and that it wasn't uncontested. Well, that's not exactly... In fact, that's exactly not what the athletes actually told the state court. So, for example, in their stipulation for consent judgment, filed in mid-May of 2016, they said the parties, quote, hereby stipulate to a consent judgment being entered against defendant Secret's on counts 1, 5, 6, and 7 for an amount to be determined at a hearing and plaintiff's damages. Wasn't there a subsequent agreement that said something different and said that the other agreements are void? Well, they filed an amended stipulation which repeated the same language, and then, to your point, Your Honor, added that caveat. But listen to what they actually told the state court judge during the hearing itself. Words of counsel. Quote, the parties reached an agreement whereby Secret's would agree to a stipulation for consent judgment on the negligence claims, so they reached an agreement with us to proceed in a damages hearing. And I think the most important thing is to look at what they actually did, or perhaps more accurately did not do, at that hearing. Only the Sniders testified. Secret's never spoke. They never cross-examined a witness. They never challenged or defended a single issue at that case. It was uncontested pursuant to the party's own stipulation. The party's own settlement agreement said that they, quote, agreed to enter into a consent judgment on plaintiff's causes of action for negligence. So the really crucial piece in this collateral estoppel analysis is the fact that the hearing before the state court judge was, in fact, uncontested. This is Judge Strange. Can you tell me what your best case from Ohio State Court is for your claim that the requirement that an issue be actually and directly litigated means that we can't give preclusive effect to a consent judgment? State X. Rel. Davis v. Public Employees Retirement Board. The issue, quote, must have been addressed and decided on the merits by the chiropractor. Counselor, my reading of that case is that it was not about consent judgments. That case was about whether a non-profit remained a public employer because of county control. Right, but it was articulating the principles for collateral estoppel. Now, one case that was directly on point was Allstate Insurance Company v. Merrick, where the appellate court refused to give collateral estoppel effect to a prior damages hearing because the court said an issue was not actually litigated if it is the subject of a stipulation between the parties. Wasn't that a case in which the insurer actually defended under a reservation of rights and then was granted a declaratory judgment but withdrew prior to the key hearing? Why didn't you pursue a similar course here? Well, to answer your first question, no. In the Allstate case, they were not participants. In fact, the court said that its concern was that it was clearly to the insurer's advantage, quote, to have its conduct characterized as negligent because there is no dispute as to coverage for negligent conduct. So the Allstate case, I think, is on point for us. To your second question, why did MESA intervene when it did, MESA was certainly entitled to rely on its coverage decision, and the exclusions that it was relying on were expressly put in the complaint itself and were reiterated in the subsequent letters provided by Secrets and Counsel. The timing of the declaratory lease action shouldn't have... Here's my concern. Judge Strange is speaking, and you'll have to stop speaking when she starts speaking. You may not be able to hear, but answer for me why Howell v. Richardson doesn't conclusively establish the issue here, that where there is an opportunity to litigate in the original action, that that will preclude re-litigation of liability and supplemental proceedings, and that the opportunity to intervene must be seized, and MESA didn't do that. Well, Howell is different because in Howell they actually did litigate to verdict in the underlying case. That case was actually litigated. You know, about 20 years later, when State has to try it, it can't be simply conceded or stipulated to, and that the failure to raise or contest an issue is tantamount to a stipulation. So what we learn when we read these cases together is that for Howell, where the case actually was litigated to verdict, you had collateral estoppel effect, but Davis is telling us that if you have a stipulation or the party simply failed to contest, then the issue has not been actually litigated and collateral estoppel doesn't apply. The timing of the declaratory action doesn't really have any effect on the analysis of the legal issues. In fact, I think that the real inquiry here turns on the nature of the uncontested hearing below and the conduct of the appellees. You had a representative there, did you not? Didn't MESA have the representative from the other case that was litigated present at that hearing? Yes, there was an attorney for the other insured. The insurer that did purchase the liquor liability coverage was at the hearing. Now, I think what you see from the record is that it was not clear to her what the hearing was about, and in fact was told the hearing had nothing to do with her. The docket wasn't at all clear about what was happening on that date, but in any event, she was there on behalf of the Chief Lounge. Well, if she was there on your behalf when she saw what was unfolded, was it not incumbent upon her to seize the opportunity and to address the court or to request a continuance or to seek to intervene? Not in the least, Your Honor. She was there representing her client. Her client was G.G. Lounge. Her client was not MESA in the coverage dispute. The entire uncontested hearing took about an hour. There was no opportunity for her to contest or intervene, and she didn't know what that hearing was about before she got there. That was one of the ways... Well, help me understand. Why did she go? Her case was resolved. She was working for MESA. Who told her to go? Well, Your Honor, I've not... I can't answer that question other than the fact that it was still in connection with her own client. She did not represent MESA, and that's really critical here. She was not engaged by MESA on these coverage issues, and so MESA was not represented at that hearing. But whether it was or it wasn't, the crucial point is the hearing was uncontested pursuant to the party's agreement, and under state XREL Davis, that does not qualify for collateral estoppel. Well, I don't see... Excuse me. This is Julia Gibbons. I don't see why, in order to determine the damages that the state court found, it had to determine an amount of damages that was attributable to the common law negligence claim and then had to apportion that total amount of damages among the responsible parties. I don't see why a part of the determination of what the damages are for the common law negligence claim, why that does not amount to an actual litigation of the state court's judgment. Well, Your Honor, we're not challenging whether the state court judgment is binding as to secrets in the Sniders. We're only challenging whether it can be applied to us. Well, you're saying the issue wasn't litigated, and I guess what I'm saying is that the finding of damages necessitates a litigation of the issue, at least in part. Well, Your Honor, I think it's important to bear in mind what the issue is they're trying to estop here. Here, they're saying the issue is whether the common law negligence claim was separate and independent from the furnishing of alcohol. They're not claiming that the allocation of damages was the issue. They're using the substantive issue about the scope of the common law claim to estop Mesa from litigating its coverage. The state court did two things in that hearing. One, it determined that the common law negligence claim was separate, and two, it determined an amount of damages for that claim. Well, Your Honor, to your first question, I think the common law negligence is separate and apart from the sale or furnishing of alcohol, because that wasn't essential to its judgment. The parties withdrew the Dramshock claim and said they were proceeding only under common law negligence. All the court had to do... Counsel, how is it possible to get a verdict or to get a judgment of liability on a common law claim It doesn't matter whether you've withdrawn the Dramshock. If you're correct that this was basically a Dramshock case without a viable common law negligence claim, then there wouldn't be any liability. The judge would have said, look, I see that this is what you're alleging, but there's no liability. You really can't separate this out. And no damages. I mean, that was my point. Well, Judge White, to your point, I think you're right, that if all that had been alleged in the first place was common law damages, Secrets had an absolute defense, which it chose not to The point I was making was that because they withdrew the Dramshock claim on the morning of the hearing, without notice to anybody else, and pursued only the negligence claim, the only thing the trial court had before it was the duty and a breach of the duty. Anything the court said beyond that was simply dicta, and under Ohio law, the issue must be essential to the judgment in order for it to be entitled to collateral estoppel effect. But counsel, if what the judge had in front of him was the duty and the breach of the duty and the damages, then it was litigated because you can't recover unless you can separate it from the damages. Your Honor, it's not actually litigated when Secrets sits like a potted plant and doesn't say anything during the proceeding. It was not an adversarial proceeding. It was conducted pursuant to a stipulation where Secrets agreed it would not defend. It would not defend. Where are you getting that from? Counsel, the stipulation that I see says very clearly that they are not admitting liability, that the court is to determine liability, and that any prior agreements are void. I don't understand where you're getting this notion. You're quoting plaintiff's counsel. Yes, I'm quoting transcripts. You're not quoting Secrets counsel. There was nothing to quote because Secrets never actively participated in the hearing. That's the point. Have you made your point, Mr. Campbell? In that case, I want to check with the clerk about how much time you have left. Judge Gibbons, he's already gone over a little bit because the questions continued. I just didn't interrupt yet. Your time is up, Mr. Campbell. You'll have your rebuttal. Thank you, Your Honor. Mr. Flowers? Good morning, Your Honor. My name is Paul Flowers. I represent the plaintiff appellees, Sharon and Terry Snyder. Snyder's have standing in this appeal as the successful judgment creditors, so I'm not going to get into that. I thought what I'd do is start off with Judge White's line of questioning and really try to emphasize that Secrets cannot be negligent. They actually defended this very vigorously through private counsel that they had to pay themselves. These issues, a lot of them on DramShop were debated during summary judgment, which they lost. It really came down to a financial decision for them with the fact that the negligence evidence was overwhelming. They couldn't afford to try the case that they were probably going to lose. The risk of a jackpot jury verdict was very high. To consent to this bench trial where Judge Calabrese just looked at the record evidence, some 20 depositions, hundreds of exhibits, probably 10 or 11 extra reports and decided liability and damages based on that, that made perfect sense for Secrets. I may be beating a dead horse here, but they absolutely did not concede liability at any point. What about that quote from the beginning of the proceedings? From plaintiff's counsel? Yes. He made that quote. I don't know how that could possibly be binding on Secrets who hadn't conceded liability. This is a case of the proof being in the pudding. Judge Calabrese didn't think that Secrets had conceded liability. You look at her order and she very plainly indicates that she felt incumbent upon her to decide liability based upon the evidence, which she did very thoroughly. That was in this amended stipulation. It's in the record at page ID 845. Just at the quote, defendant Secrets specifically denies liability on any causes of action brought by plaintiffs, but agreed to allow the trial court to evaluate the liability evidence and damages prior to entering a consent judgment, if any. To say this is uncontested, no. The depositions were all there in which Secrets' own representatives tried to claim that they did the right thing and they didn't serve him any alcohol, but they also had no explanation for why they didn't alert the defense. She took two months for this decision. This wasn't a rubber stamp by any means. Cross-examination, there wasn't any during the hearing because the only witnesses put on at this final hearing were just the damages witnesses. I think the defense made a wise move by not cross-examining them. There's plenty of cross-examinations in the deposition. In fact, they're almost entirely cross-examination. So to call this uncontested is inaccurate. It really was the judge looking at the record, which made perfect sense under the circumstances. As I'm sure the court appreciates, these consent judgments are something that the Ohio judicial system encourages. They save a lot of time and effort, particularly in a case like this where you have a defendant who's got limited resources left because the insurer has denied them coverage. We cited the Columbus v. Elden E. Stilson Associates case, a 10th District case from 1983, that says flat out a consent judgment is the same as any other judgment. That's certainly the case here. This is one where it made perfect sense for the parties to do this, and it produced a result that I guess MESA should have anticipated all along. To follow up on Judge's questioning, if I could, the Howell case is on point. Yes, there is actual litigation there over the issue, same as here. The point of Howell, though, is that the insurance company is considered to be in privity with the insurer, and therefore must seize that opportunity. If anyone's a potted plant here, it's MESA, which did absolutely nothing up until the point that this declaratory judgment action was filed after the parties had met for the bench trial and Judge Calabrese was considering her decision. Yes, it did have a representative there in the form of the attorney who had been hired to defend Keegees, and that attorney attended that hearing for the very purpose, the only conceivable purpose, of advising MESA as to what was going on. That was their only involvement. That was the only thing they did. The Howell case very clearly spelled out to them years earlier that they have to intervene if they're not going to defend the claim. They have to protect their rights. All these arguments about the Dram Shop Act and so forth barring the claim, those should have been pursued in an appeal by MESA in state court. We require that and encourage that precisely to avoid duplicative litigation like this and to force everybody to resolve all their claims in a single proceeding at the earliest opportunity. Judge Strachan asked the question about the litigation requirement. There are no Ohio cases that say actual litigation requires a full-blown contested trial. The case we've been citing throughout these proceedings is Patterson v. Tice, which is a 5th district case from 1983, which followed the Howell decision. There we had a default judgment. The default judgment was under the amount of $400,000. The appellate court held that the insurance court in making its own casual determination that it had no duty to defend Tice in the underlying act was bound by the factual conclusions arising from the default judgment. What we have here can't even be characterized as a default judgment. Here we have the judge deciding negligence, approximate cause of damages. Yet a default judgment by itself would have been enough to invoke collateral estoppel under Patterson v. Tice. That's uncontested Ohio law. That's never been overturned. Based on that, that takes us to the Sanderson case. This case warned Mesa what exactly was going to happen. Sanderson v. Ohio Edison, an Ohio Supreme Court case from 1984. We had the scenario where a 10-year-old child starts an Ohio Edison truck. It hits the gentleman in front of the truck. He sues. Defendants deny coverage. The judgment is entered. The Supreme Court writes in holding the insurer liable through collateral estoppel, by abandoning the insured to their own devices in resolving the suit, the insurer voluntarily foregoes the right to control litigation and consequently will not be heard to complain concerning the resolution of action in the absence of fraud, even if liability is conceded by the insured as part of a settlement negotiation. In Sanderson, we had actual concession of liability in the case. They settled the case, settled the whole thing, and collateral and the insurer that was going to protect its rights had to get involved early. I point out just with regard to Judge Calabrese's state court opinion, that's really what you control here. Whatever the party said verbally in court isn't binding on anyone. Their mediation certainly is, but that's expressly reserved. The right to control issue in her mind were actually litigated on the record materials before her, and she was reaching her conclusions based upon her evaluation of that evidence. Nothing she writes can be characterized as dicta. It was all essential to the decision. She had to be very clear that her decision was based on the negligence claim and was unrelated to the sale or service of alcohol because any claim that is made to the insurer is a negligence claim. Her decision is based very clearly on the fact that Mr. Vargas enters secrets. At best, he has served one beer two hours before the accident. He proceeds to assault a dancer. He proceeds to use a credit card in the name of Sandra Torres, who obviously is not him, which they accept. He's observed exhibiting weird behavior, and then he not only is an off-duty Cleveland police officer, they've hired to provide security standing right there, and they don't alert him to Vargas's condition or make any effort to stop Vargas from entering the highway. None of that has anything to do with the sale or service of alcohol to Vargas, who at best at secrets had one beer very early in the evening. He was highly intoxicated when he arrived, and secrets reached the duty that every business owes to exercise due care to make sure that foreseeable harm is avoided. The harm here was eminently foreseeable. That's the basis of the negligence claim, and that's why it doesn't run afoul of the Dram Shop Act. Judge Calabrese had to be very specific that that was the nature of her negligence claim because the Dram Shop Act would otherwise create a problem for her. Everything in her decision was not only necessary for her to resolve, and that's the result that was reached. In the end, it really just comes down to the fact that MESA needed to intervene. This court's decision in Mid-Continent v. Coder should have alerted them that the issue of a duty to defend was a serious question that had to be considered. You just can't decide on your own what the law is and then proceed to act accordingly, but by failing to intervene timely, failing to protect their rights, they're now bound by the judgment. Counsel, when you began, you said that there was motion practice where this was raised. Can you be more specific? This proceeded along the course of all Dram Shop cases. There were very serious summary judgment motions filed in the proceeding on the common law claim, and those were denied. Are you saying that one aspect of the motions was that plaintiffs could not maintain these common law claims because this would be exclusively a Dram Shop remedy? Well, this was as of the co-defendant Gigi's Lounge. Gigi's Lounge was a different scenario because they had served a lot of alcohol to Mr. Vargas, so a Dram Shop claim was being pursued. But the court did recognize that in Ohio law's courts, that if you can make a claim outside of the sale or service of alcohol a negligence, that's not barred on the Dram Shop Act. I'm not following you. I understood you as being saying that this particular defendant did not roll over, in fact, had brought motions for summary judgment that were denied. And now I hear you say it's a different defendant. I'm just a little lost. Oh, I'm sorry. I probably was being imprecise on this. It would have been the co-defendant Gigi's Lounge who brought that because they were actually targeted with a Dram Shop Act. The Dram Shop claim was never panning out against secrets because there was only one beer served there two hours prior to the accident. So it was abandoned prior to trial just because it could not be sustained. But the negligence claim was very strong against secrets and that was pursued, which is what Judge Calabrese found. Judge Gibbons, Mr. Flowers has exhausted his 12 minutes. Okay. Is there a further question for Mr. Flowers? Yes. Mr. Flowers, you referred to a summary judgment motion with respect to this one and what was the issue? I'm sorry. If I said it was as to this defendant's secrets, I misspoke. What I was pointing out was just that there was motion practice in this case. And I can say quite seriously that secrets did not roll over as soon as the defense was abandoned by MESA. They incur pretty substantial legal fees. Okay. Counsel, I'm just trying to get some clarity. What you're saying doesn't make sense to me. The fact that another defendant brought a motion does not to me translate that secrets did not roll over. I mean, what is it about that motion practice that relates to secrets? Well, just this, the same issues were involved as far as dram shop immunity. The defendants were in different positions. The way this proceeded, they were co-defendants a lot of ways. And I think the only point I was trying to make was that this was not a situation where they just threw up their hands and said, you know, can we work out a consent judgment right away? And it was a case that went through and there was never at any point any concession of liability by secrets. This is Judge Strange. Evidently from the hearing that we have the record of, there was extensive discovery, correct? Correct. And secrets participated? Yes, secrets participated. There's a lot of there. Finish that sentence. I'm sorry? I said finish that sentence if you want to. Oh, I was done. Thank you. I see I'm running out of time. I've got one more question. With respect to the two different plaintiffs and the standing issue, was there only judgment in favor of secrets or did the Sniders also have a claim under the policy, the claim that was assigned to them? Did they pursue this? Does standing matter is what I'm asking? Not for the Sniders because they have a statutory right to pursue their judgment against MESA directly as the judgment creditors. That's never been in dispute. I mean, the standing argument is that secrets assigned all their claims to the Sniders. Well, okay, if that's true, then the Sniders are parties in this case. What's the difference? Judge Nugent's judgment was for all of them. Okay, that's what I was asking. Okay. We'll hear from Ms. Sheehan. Good morning, Your Honors. My name is Michelle Sheehan, and as we previously mentioned, I am representing both Secrets Gentlemen Club and GLMR, but I'll collectively refer to them as Secrets. And I just want to take a few moments. I want to address the standing, but I do want to reiterate there was no potted plant. Just the sheer fact that my client had to incur over $100,000 in legal fees to defend themselves from day one when the lawsuit came in. They were begging MESA to defend them on these common law causes of action, and they had counsel repeatedly notify them, tell them throughout the process. And then they had to incur all the depositions, all the discoveries. So as Mr. Flowers pointed out, when it did come time for trial, it was best just to let the court decide liability. And as Judge White noted and was mentioned at page ID 845, that stipulation goes on to talk about how Secrets did not concede liability, stood by its affirmative defenses, and so forth. How do you account for trial counsel's statement? I mean, with regard to counsel for Snyder's and that comment that was in the transcript, that was Secrets counsel did not concede any such liability. And that, like I said, was I think if anything the heat of a hearing. But Judge Calabrese, as you pointed out, she understood her instructions were to evaluate all of the evidence, to examine everything, and determine liability and damages, which is what she did in that extensive opinion. I just wanted to touch on that and then go to the standing issue. As to Secrets, Secrets absolutely had and has standing in this case. Mace was the one who sued Secrets for a declaratory judgment action. And if you look at the pleadings, Secrets has a right to defend themselves as well as assert a counterclaim for the declaratory judgment action. I would point to the court to page ID number 1460. That's the agreement that specifically sets forth that Secrets still has a right to defend claims under any declaratory judgment action that would be brought by Mace. So it is a partial assignment. They have a duty to defend and they have that right to assert their declaratory judgment action. And in this case, that's what Judge Nugent decided was a declaratory judgment action. So they had that right. And as the court knows, standing simply requires that an injury be suffered, that it's traceable, in this case to Mace's conduct, and that it's likely to be redressed by a favorable judicial judgment. With that legal standard involved, Secrets paid $100,000 in attorney fees and they're still paying money towards the plaintiff. They reached that standing agreement. I would also point out that this is a little procedurally unique, I find it, because the court terminated the motions to dismiss the counterclaim and then dismissed all remaining claims on that counterclaim. So I'm struggling a little bit with what's before this court because the Secrets counterclaims have been dismissed and aren't really before this court. So the law still has standing under that standard in the law of, was an injury suffered, is it traceable, and is it likely to be redressed? And then as Mr. Flowers touched on as well, it's also a unique situation as far as it really is a difference without a distinction because all the trial court did was issue an order on a declaratory judgment, finding that Mesa has a duty to defend and reversible error as to Secrets or Snyders for that matter. And that's why with this limited issue of declaratory judgment, the trial court's judgment should absolutely be affirmed and there's no basis for reversible error on the standing issue. So I just wanted to make those final comments. Judge Gibbons, Ms. Sheehan has exhausted her time. Okay. All right. You're saying that the judgment was actually entered on the affirmative claim, the declaratory judgment action, and your client was a named defendant, that that's where the judgment was entered and not on any counterclaims? That's true that the judgment was entered on a declaratory judgment. Now Mesa sued Secrets for declaratory judgment and Secrets' counterclaim for declaratory judgment, as they had that right in the agreement with the assignment, they still retained that right. So whether it's on Mesa's claim against Secrets or Secrets' counterclaim for declaratory judgment, either way they're standing on both ends. But that was what the judgment was for on the declaratory judgment. We appreciate the argument both of you have given and we'll consider the case carefully. Thank you. Thank you, Your Honor. Rebuttal? Oh, I'm sorry. I'm sorry. I was looking at the time and thinking we were going to hear from you. Thank you, Your Honor. I appreciate that. Just a couple quick points on the issue of standing. Just to be clear, these counterclaims that Secrets is asserting are the same ones they assigned. They don't have claims to assert anymore. We sued them early on because we didn't know about the terms of the settlement agreement. That agreement was never provided to the state court and it wasn't given to us either. It wasn't until we obtained it through motion practice that we were finally able to realize that Secrets, in fact, had assigned all of these claims. The very claims that you reasserted... What difference does it make? Pardon me? Counsel, if you've got both claims as well, I'm a little confused as to what difference it makes. As to what difference it makes? Right. Well, it makes a big difference. For one thing, we shouldn't have to defend twice in the same case. We shouldn't be subject to the potential for duplicative judgments and whether there may be limits on the kinds of claims and the kinds of relief that the citers can obtain that might have been available to Secrets. It makes all the difference in the world. If a party has no standing, they have no right to participate. Judge Nugent never even addressed that question. We are asking the Sixth Circuit to address it and find that Secrets lacks standing and whatever claims there are to assert would now belong to the Sniders in the event that there was a remand of this case. I just want to point out as well, if we go to the settlement agreement between Secrets and Sniders, which was entitled, Stipulation for Consent Judgment, here's what they actually said in their own agreement. The Secrets quote, agrees to permit plaintiffs to obtain a judgment against it. Secrets agrees it will not appeal the judgment entered against it by the trial court at any time. Secrets' silence was stunning during the hearing. The only time their counsel spoke was to correct a spelling on the record. The Ohio Supreme Court in the case decided decades after all of the authority that the athletes are citing here said that you have to be able to try it to judgment by the trier of fact and it has to be essential to the judgment before collateral estoppel can apply. It doesn't matter that there was a discovery record. When they were silent and failed to contest during that hearing, that turned into nothing more than a stipulation or a consent hearing and that's exactly what State Exeral Davis said, will not support collateral estoppel. Judge Strach, I recognize that there appears to be some sort of fraud would be the exception and it sounds to me that you've said you've argued collusion and sat there like a potted plant, but I've looked through the district court record and I cannot find that you raised collusion before the district court. Can you tell me where in the record before the district court you raised the issue of collusion? Yes, we raised each of the badges of collusion almost from the outset and it exists in virtually every motion and every reply brief that we filed. In our brief before the Sixth Circuit, we cited the continental casualties. I know you raised it before us. I'm asking if you raised it below and I'm not seeing it in the district court record. Can you point me to that? Yes, in our motion practice we emphasize the uncontested hearing, the affirmative concealment by the parties, the profits that Secret is retaining in the outcome of this case and their use of that underlying state court judgment as a sword to preclude our defense here injures Mesa by affecting insurance coverage. We argued each and every issue at almost each and every point below and it was certainly all before Judge Nugent when he made all the final decisions in this case. Do you have in the record an accusation of collusion or fraud specifically? We don't use the word collusion, but we've argued all the underlying facts, including the ones I've mentioned and others. And I think we cited that in our brief before Your Honor. You did before us. I did not find collusion or fraud specified in the record below. I apologize. What I meant to say was I think we cited to those instances below where we were raising these factual defenses with respect to the underlying nature of that action. And one last point I'd like to make on the issue of coverage. Mesa's coverage decision was vindicated by the Ohio Supreme Court's decision in Johnson v. Montgomery in September 2017. That case affirmed the overwhelming majority of Ohio cases that had found that the Dram Shop Act is the exclusive remedy where the claim is on behalf of a third party injured at the hands of a patron who was visibly intoxicated when they were served by the liquor permit holder. The trial court had an obligation to look at the law in Ohio, which could not have been any clearer. There were the overwhelming majority of cases held the same way. The Ohio Supreme Court has now affirmed that. And so the coverage decision that Mesa made in the first instance was correct. We thank you all for your argument. We'll consider the case carefully. Thank you so much, Your Honor. The attorneys can go ahead and hang up. And Victoria, if you can just verify for me once that's happened. Thanks, everyone. Victoria? Okay. All the attorneys are off the line. Okay. Thank you. Judge Gibbons, we're going to disconnect from the courtroom. If you happen to believe that either colleague has been disconnected, you can press star zero and hang up. Okay. Thank you. Thank you. Victoria, they're just going to stay on and conference. And then once that's finished, the call is ended. Okay. Thank you. Thank you. Victoria, are you gone?